JOURNAL ENTRY AND OPINION
On October 14, 1999, the applicant, James Waver, pursuant to App.R. 26 (B), applied to reopen this court's judgment in Stateof Ohio v. James Waver, (Aug. 30, 1999), Cuyahoga App. No. 73976, unreported, which affirmed his convictions for two counts of rape both with sexually violent predator specifications and one count of felonious assault with a sexual motivation specification. On October 22, 1999, Mr. Waver supplemented his application with letters written to his attorneys. Although the State of Ohio did not file a brief in opposition, for the following reasons this court denies the application.
 FACTUAL AND PROCEDURAL BACKGROUND
Mr. Waver and Connie Thomas lived with each other "off and on" for approximately ten years; he fathered two children with her.[1] This relationship too often became violent because of his jealousy. When he thought that Ms. Thomas had been unfaithful to him, he would become hostile and sometimes violent. For much of this time, they did not live together, often because he was in jail.
In 1996, Mr. Waver battered Ms. Thomas and gave her a black eye. In defending herself Ms. Thomas broke his nose. After this incident the County's Children Services obtained temporary custody of all of Ms. Thomas' children.
In early 1997, Mr. Waver faced charges for possession of drugs in State of Ohio v. James Waver, Cuyahoga County Common Pleas Court Case No. Cr. 347241. On April 21, 1997, he pleaded guilty, and the court ordered a presentence investigation report and scheduled sentencing for May 22, 1997.
On or about May 5, 1997, Ms. Thomas moved into an abandoned house on East 31st Street; the house she had been living in was being torn down. At that time both Ms. Thomas and Mr. Waver worked for the Minute Man Temporary Agency; she was then working the second shift at the Cleveland Clinic laundry room.
Mr. Waver and Ms. Thomas spent the night of May 7-8, 1997, together in that abandoned house. They talked, drank and used crack cocaine. At approximately 6:30 a.m. on May 8, 1997, Mr. Waver took his and Ms. Thomas' work tickets to Minute Man to get their pay. He obtained his pay, but Minute Man would not release Ms. Thomas' pay to him. On the way back he bought more beer.
When he returned to the abandoned house, he accused Ms. Thomas of "messing around" with someone else. He tore her pants off in order to check if she was "wet." Without her consent he inserted his fingers into her vagina. When he found the usual vaginal moisture, he concluded that she had been unfaithful and stated "Bitch, I'm going to kill you." He went to the kitchen area and picked up a piece of pipe. During the ensuing altercation, he placed either the pipe or his fingers into Ms. Thomas' anus and ripped her apart from the anus to the vagina. He also battered her with the pipe, breaking both her arms and striking her on the hip and head. The last thing Ms. Thomas remembered was that she was covering her head. He left her unconscious in the abandoned house.
When Ms. Thomas came to, she ran to the home of Jeff King, a neighbor, to call the police. She was bleeding and wearing only a shirt and sweater. However, when she arrived at Mr. King's home, she saw Mr. Waver using the telephone. She ran back to the abandoned house and put on a pair of pants. While running toward Euclid Avenue, she flagged down a police car. The officers took her to St. Vincent Charity Hospital. There she received treatment for the injuries to her arms. However, Charity Hospital did not have a surgeon to repair the damage done to her rectal area. Charity sent her by ambulance to Metro Health Medical Center, where surgery repaired that injury. After Ms. Thomas spent the next five days recovering in the hospital, she left to live with her mom. Ms. Thomas also began parenting classes to help regain custody of her children.
On May 8, 1997, Mr. Waver, after making the telephone call at Mr. King's home, left when someone in a brown car picked him up. He returned to Mr. King's home later that day, and police officers arrested him between 6:00 and 7:00 p.m. on May 8.
On May 22, 1997, the Grand Jury indicted Mr. Waver for two counts of rape and one count of felonious assault. Also on that day the trial court sentenced him to eleven months imprisonment on Case No. CR-347241.
The next day the trial court arraigned Mr. Waver in the present case. He pleaded not guilty, and the court appointed an attorney for him. It set pretrials for June 4 and 10, 1997.
When Mr. Waver did not appear at the June 10, 1997 pretrial, the court issued a capias. When it was discovered that he was at the Lorain Correctional Institute, the court ordered him returned for an August 5, 1997 pretrial.
On June 24, 1997, Mr. Waver requested pursuant to R.C. 2941.401
to be tried within 180 days on the rape and felonious assault charges by sending a form "Notice of Untried Indictment, Information or Complaint and of Right to Request Disposition." Attached to the copy of the form in the trial court file are copies of "Receipt for Certified Mail" and the accompanying postcards. The card addressed to the Clerk of Courts has the "Date of Delivery" line filled in as July 9, and underneath the "Received By:" and "Signature" lines is the written date "7-10-97." The card addressed to the prosecuting attorney has the date "Jul 11 1997" stamped above the "Date of Delivery" line.
After the August 5, 1997 pretrial there ensued a series of continuances and pretrials. In an order dated August 5, 1997, and journalized August 29, 1997, the trial court scheduled the next pretrial for September 3, 1997, and ordered Mr. Waver returned from the Lorain Correctional Institute. In an order dated September 4, 1997, and journalized September 8, 1997, the court set the next pretrial for September 18, 1997, "at the request of the defendant."
In an order dated September 22, 1997, and journalized September 30, 1997, the trial court set the next pretrial for October 6, 1997, "at the Defendant's request." In an order dated October 6, 1997, and journalized October 9, 1997, the court scheduled the next pretrial for October 7, 1997, "at the request of the defendant." In an order dated October 9, 1997, and journalized October 16, 1997, the court set the next pretrial for October 22, 1997, "at the defendant's request."
In an order dated October 22, 1997, and journalized October 28, 1997, the court set the next pretrial for November 3, 1997, "at the defendant's request." In order dated November 4, 1997, and journalized November 7, 1997, the court scheduled the next pretrial for November 21, 1997, "at the defendant's request." The state requested the next continuance; the court in an order dated November 21, 1997, and journalized November 25, 1997, set the next pretrial for December 8, 1997.
Finally, in an order dated December 9, 1997, and journalized December 12, 1997, the court scheduled the trial for January 8, 1998, "at the request of the defendant."
Before trial began on January 8, 1998, Mr. Waver's trial counsel brought to the attention of the court that Mr. Waver, on June 24, 1997, had requested that he be tried in this case within 180 days. The trial counsel indicated that this was the first he had heard of the request. Although trial counsel showed the return receipt that the prosecutor's office had received the request on July 11, 1997, the prosecutor denied receiving the request. The trial judge then stated that January 8, 1998, "would be the sixth month." Defense counsel initially agreed but then stated: "I just got these papers from him. I didn't add up the days." The trial judge then concluded that there was no issue here, but that defense counsel had made the record. (Tr. Pgs 3-5.) In actuality, 198 days had passed from June 24, 1997, and 181 days had passed from July 11, 1997, the day the return postcard indicates the prosecutor received Mr. Waver's request.
At trial Ms. Thomas testified to the events of May 8, 1997, as indicated above. The thrust of Ms. Thomas' cross-examination was that Social Services pushed Ms. Thomas to help prosecute Mr. Waver as part of the process of getting her children back.
Mr. King, a friend of both Mr. Waver and Ms. Thomas, testified as follows: At approximately 8:00 a.m. on May 8, 1997, Mr. Waver, who kept some of his clothing at Mr. King's home, arrived and said that Ms. Thomas had been raped. Mr. King told him that he should go to Ms. Thomas and help her. Mr. Waver replied that if he went to Ms. Thomas, the police might put him in jail. A little later Ms. Thomas came to the door. She was crying and had no clothes on below the waist. When she saw Mr. Waver, she looked scared and ran back toward the abandoned house.
Mr. Waver testified on his own behalf. He denied hitting or raping Ms. Thomas. On the morning of May 8, 1997, Mr. Waver testified that he left the abandoned home on East 31st Street at approximately 6:30. He then walked to a residence on East 79th Street where he kept some of his clothes. He wanted to change for an interview for food stamps. However, when he got there, he could not gain entrance. While walking back to Mr. King's home, he met "a guy at the car wash" who told him Ms. Thomas had been raped. (Tr. 191.) On cross-examination Mr. Waver indicated that some people stayed upstairs in the abandoned house. He also stated on cross-examination that a Darrell at McDonald's told him Ms. Thomas had been raped. He also said that he called the police from Mr. King's home, but that the police told him the victim had to call. He then said he called Ms. Thomas' uncle, who came and picked him up to look for Ms. Thomas.
The jury found Mr. Waver guilty of two counts of rape and one count of felonious assault. The trial court found him guilty of the specifications and sentenced him to ten years to life for the rape counts and eight years for felonious assault, all counts to be served consecutively.
Mr. Waver timely appealed. New counsel represented him and raised the following assignments of error: (1) The finding that Mr. Waver was a sexually violent predator was not supported by the evidence. (2) The finding of guilt on the sexual motivation specification was not supported by the evidence. (3) The evidence was insufficient to sustain a verdict of guilt on two separate charges of rape. (4) The verdict was against the manifest weight of the evidence. (5) Improper prosecutorial remarks during closing argument denied Mr. Waver a fair trial. (6) Evidence of other acts were inadmissible under Evid.R. 404 (B). (7) The trial court erred in not merging the rape counts as allied offenses of similar import. (8) The trial court erred in not affording Mr. Waver the right of allocution. (9) The trial court did not comply with R.C. 2929.19 (B) (3) (b) and (e). (10) The trial court abused its discretion in imposing maximum consecutive sentences.
On August 19, 1999, this court affirmed the convictions. However, it ruled that the trial court did not provide Mr. Waver with the right of allocution. Thus, it reversed and remanded the case for re-sentencing.
Mr. Waver then timely filed this application to reopen.
 DISCUSSION OF LAW
Mr. Waver claims that his appellate counsel was ineffective in the following ways: (1) He did not argue that Mr. Waver was deprived of his constitutional right to a speedy trial pursuant to R.C. 2941.401. (2) Appellate counsel failed to submit a full record, the Notice of Final Disposition and a pretrial transcript, showing that Mr. Waver raised his speedy trial issue. This also deprived Mr. Waver of a full record. (3) Appellate counsel was also ineffective for not arguing that trial counsel was ineffective for not moving to dismiss the charges pursuant to R.C. 2941.401. Additionally, Mr. Waver also filed a supplement to his application consisting of three letters to his attorneys during the appeal. In his cover letter he states that he is submitting these letters as exhibits "for proof of my request to raise ineffective assistance of counsel and to raise my speedy trial issue." In the first exhibit, a letter dated November 6, 1998, and directed to an attorney who did not file the appellate brief, Mr. Waver focused on the R.C. 2941.401 issue. In the other exhibits, letters of February 10 and 11, 1999 sent to the attorney who did write the appellate brief, Mr. Waver does not mention the R.C. 2941.401 issue. Rather, he asks his attorney to add constitutional language to the assignments of error, to raise prosecutorial misconduct because the prosecutor expressed his opinion during the cross-examination of Mr. Waver and confused the jury about rape, to raise ineffective assistance of trial counsel because trial counsel did not object and failed to bring out and argue the state's coercion of Ms. Thomas, and to raise as error the denial of the motion for directed verdict.
In order to establish a claim of ineffective assistance of appellate counsel, the applicant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington (1984),466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, cert. denied (1990),497 U.S. 1011, 110 S.Ct. 3258.
In Strickland the United States Supreme Court ruled that judicial scrutiny of an attorney's work must be highly deferential. The Court noted that it is all too tempting for a defendant to second-guess his lawyer after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'"Strickland, 104 S.Ct. at 2065.
Specifically, in regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions. The court noted: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jonesv. Barnes (1983), 463 U.S. 745, 77 L.Ed.2d 987, 103 S.Ct. 3308,3313. Indeed, including weaker arguments might lessen the impact of the stronger ones. Accordingly, the Court ruled that judges should not second-guess reasonable professional judgments and impose on appellate counsel the duty to raise every "colorable" issue. Such rules would disserve the goal of vigorous and effective advocacy. The Supreme Court of Ohio reaffirmed these principles in State v. Allen (1996), 77 Ohio St.3d 172,672 N.E.2d 638.
Moreover, even if a petitioner establishes that an error by his lawyer was professionally unreasonable under all the circumstances of the case, the petitioner must further establish prejudice: but for the unreasonable error there is a reasonable probability that the results of the proceeding would have been different. A court need not determine whether counsel's performance was deficient before examining prejudice suffered by the defendant as a result of alleged deficiencies.
In the present case Mr. Waver's arguments on ineffective assistance of appellate counsel are not well taken. The gravamen of this application is that Mr. Waver's right to a speedy trial pursuant to R.C. 2941.401 was violated, and thus his convictions should be vacated and the charges dismissed with prejudice.
R.C. 2941.401 provides in pertinent part as follows:
 When a person has entered upon a term of imprisonment in a penal or correctional institution of this state, and when during the continuance of the term of imprisonment there is pending in this state any untried indictment, information, or complaint against the prisoner, he shall be brought to trial within one hundred eighty days after he causes to be delivered to the prosecuting attorney and the appropriate court in which the matter is pending, written notice of the place of his imprisonment and a request for a final disposition to be made of the matter, except that for good cause shown in open court, with the prisoner or his counsel present, the court may grant any necessary reasonable continuance.
* * *
 If the action is not brought to trial within the time provided, subject to continuance allowed pursuant to this section, no court any longer has jurisdiction thereof, the indictment, information, or complaint is void, and the court shall enter an order dismissing the action with prejudice.
Thus, Mr. Waver argues that because more than 180 days elapsed from June 24, 1997, the date of his request under the statute, to January 8, 1998, the date of trial, the trial-court had lost jurisdiction to try him and the convictions are void. Appellate counsel was defective for failing to raise this issue which could have completely won the case for Mr. Waver.
However, the argument is not well founded because of the many continuances which were granted at defendant's request. Each of the journal entries scheduling another pretrial at defendant's request and the December 12, 1997 entry scheduling trial for January 8, 1998, are continuances which subtract time from the 180 day period. That final continuance, from the journalization date to the day of trial, was for twenty-seven days; subtracting twenty-seven from 198 leaves 171 days, which is well within the time limits provided by R.C. 2941.401. The total of all the continuances from the date of journalization of the appropriate orders to the next scheduled date of a pretrial or the trial equals seventy days. The sum of all the continuances from the date of the orders to the next scheduled date of a pretrial or trial is 100 days.
R.C. 2941.401 explicitly allows the court to grant continuances for good cause shown when the defendant's counsel is in court, as he would have been at the pretrials. Furthermore, in State v.Rodano (Apr. 14, 1988), Cuyahoga App. No. 53804, unreported, this court ruled that pretrials "held and continued at defendant's request," as the continuances in the present case were, waived the defendant's right to be brought to trial within the time limits expressed in R.C. 2941.401. Moreover, as the Supreme Court of Ohio held in State v. McBreen (1978), 54 Ohio St.2d 315,376 N.E.2d 593, syllabus, certiorari denied (1978), 439 U.S. 714, a defendant's right to be brought to trial within the statutory time limits "may be waived by counsel for reasons of trial preparation and the defendant is bound by the waiver even though the waiver is executed without his consent." See, also, State v.McRae (1978), 55 Ohio St.2d 149, 378 N.E.2d 476. This court followed McBreen and McRae in Rodano.
Thus, it is clear that once the time of the continuances is subtracted Mr. Waver was brought to trial within the time limits of R.C. 2941.401. Appellate counsel was not deficient for not raising an ill-founded argument. Because Mr. Waver did not have a persuasive argument relating to R.C. 2941.401, his corresponding arguments, that appellate counsel failed to obtain a full transcript which would have shown that Mr. Wavier did not waive the speedy trial argument and that trial counsel was ineffective for not seeking a dismissal pursuant to R.C. 2941.401, are also meritless. Indeed, the transcript in the record shows that trial counsel raised the issue just before the start of the trial.
The court also declines to grant the application on any of the grounds listed in the letters Mr. Waver filed to supplement his application. First, it is unclear whether Mr. Waver intended to include those arguments in his application. He did not properly include them in the application and fully argue them. Furthermore, in his cover letter he stated that he tendered these exhibits to prove that he always wanted the speedy trial issue raised.
Additionally, the arguments themselves are not well founded. A review of the transcript shows that trial counsel endeavored to show the "coercion" of Ms. Thomas. Appellate counsel could properly conclude that an argument scrutinizing that cross-examination would be too weak to raise. Similarly, there is no duty to frame every issue in constitutional language. Stateof Ohio v. Fernando Lopez (May 24, 1999), Cuyahoga App. No. 74096, unreported, reopening disallowed (May 11, 2000), Motion No. 12480. Finally, appellate counsel raised the issue of prosecutorial misconduct and the issues encompassed by the denial of the directed verdict.
Accordingly, this court denies Mr. Waver's application to reopen.
PORTER, P.J. and PATTON, J., CONCUR.
 ___________________________ TIMOTHY E. McMONAGLE, JUDGE
[1] Ms. Thomas has three other children.